UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GORDON C. REID,<br>PLAINTIFF, | ) | |
| v. | ) | Misc. No. 06-44S |
| WARREN F. DOWALIBY, ET AL.,<br>DEFENDANTS. | ) | |

DECLARATION OF CEDRIC D. BULLOCK

I, Cedric D. Bullock, declare the following to be true and correct:

1. I am an Associate General Counsel for the Office of General Counsel, United States Marshals Service (USMS), Department of Justice, Arlington, Virginia.

2. Pursuant to 18 U.S.C. §§ 4002, 4006, 4013, the USMS enters into agreements with local jail facilities to house federal detainees pending federal judicial proceedings.

3. On February 1, 1999 the USMS entered into an agreement with the Strafford County Department of Corrections (SDOC) for "the housing, safekeeping and subsistence of adult male and female federal prisoners". Attached is a true and correct copy of this agreement. See Intergovernmental Service Agreement, No. 49-99-0104 (note: redactions have been made to protect confidential law enforcement information).

4. Under this agreement, the SDOC is an independent contractor and the USMS is not responsible for supervising or overseeing the day-to-day operations at the local jail where the federal detainees are housed. SDOC

administrators are responsible for operating the jail facilities in accordance with their ongoing practices and procedures, including subsistence, care, sanitation, on-site medical care, and safekeeping of the prisoners at their facilities, including federal detainees housed at the facility.

I declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Cedric D. Bullock
Associate General Counsel
U.S. Marshals Service
Headquarters
Washington, D.C. 20530-1000
(202) 307-9054

Executed on: June 14, 2006

United States Department of Justice
United States Marshals Service

**Intergovernmental S. ce Agreement**
*Housing of Federal Prisoners*



1. AGREEMENT NUMBER: 49-99-0104
2. EFFECTIVE DATE: 02 / 01 / 99
REQUISITION/PURCHASER/REQUEST NO.: 103-99
4. CONTROL NO.:

5. ISSUING OFFICE:
UNITED STATES MARSHALS SERVICE
PRISONER OPERATIONS DIVISION
IGA SECTION
600 ARMY NAVY DRIVE
ARLINGTON, VA 22202-4210

6. GOVERNMENT ENTITY
NAME AND ADDRESS (Street, city, county, State and ZIP code):
Strafford County
Department of Corrections
County Farm Road
Dover, NH 03820

FACILITY CODE(S): 2GD

7. APPROPRIATION DATA: 15X1020

Contact Person
Area Code & Telephone No.

| 8. ITEM NO. | 9. SUPPLIES/SERVICES | 10. QUANTITY | 11. UNIT | 12. UNIT PRICE | 13. AMOUNT |
|---|---|---|---|---|---|
| | This agreement is for the housing, safekeeping and subsistence of federal prisoners, including court transport guard services, in accordance with the contents set forth herein. | ESTIMATED USMS PRISONER DAYS 4,000 | PDs | PER DIEM RATE $54.00 | ESTIMATED ANNUAL PAYMENT $216,000.00 |
| | The Intergovernmental Agreement Number J-A49-M-545 is canceled and the new number is as stated in Block No. 1 | ESTIMATED GUARD HRS 100 | GHs | $19.32 | $1,932.00 |
| | | 100 | Mls | 32.5¢ | $ 32.50 |

14. AGENCY CERTIFYING

*To the best of my knowledge and belief, data submitted in support of this agreement is true and correct, the document has been duly authorized by the governing body of the Department or Agency and the Department or Agency will comply with ALL PROVISIONS SET FORTH HEREIN.*

15. NAME AND TITLE OF PERSON(S) AUTHORIZED TO SIGN OFFER

Date 3-2-99

*Name (Type or Print)* Title

*(Signature)* Date

*Name (Type or Print)* Title

16. TYPE OF USE
- ☐ Hold Over
- ☒ Regular Support
- ☐ Seasonal Support
- ☐ Other

18. LEVEL OF USE
- ☐ Minimum
- ☐ Medium
- ☒ Major

17. PRISONER TYPE TO BE INCLUDED

UNSENTENCED
- ☒ Adult Male
- ☒ Adult Female
- ☐ Juvenile Male
- ☐ Juvenile Female
- ☒ Aliens

SENTENCED
- ☒ Adult Male
- ☒ Adult Female
- ☐ Juvenile Male
- ☐ Juvenile Female
- ☐ Work Release
- ☐ YCA Male
- ☐ YCA Female

19. *This Negotiated Agreement is Hereby Approved and Accepted for*

THE UNITED STATES OF AMERICA
BY DIRECTION OF THE DIRECTOR OF THE UNITED STATES MARSHALS SERVICE

BY ________ *(SIGNATURE OF CONTRACTING OFFICER)*

20. ANTICIPATED ANNUAL USAGE

| | UNSENTENCED | SENTENCED | ALIENS | TOTAL |
|---|---|---|---|---|
| No. of Prisoners | | | | |
| Prisoner Days | 4,000 | | | 4,000 |
| Guard Hours | | | | |

21. NAME OF AUTHORIZING OFFICIAL *(Type or Print)*

22. DATE SIGNED: 2 / 22 / 99

PRIOR EDITIONS ARE OBSOLETE AND ARE NOT TO BE USED

FORM USM-241 (Rev. 3/96)

**U.S. Department of Justice**
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 2 of 11 |
|---|---|---|

ARTICLE I - PURPOSE AND SECURITY PROVIDED

The purpose of this Intergovernmental Service Agreement (IGA) is to establish a formal binding relationship between the United States Marshals Service (USMS) and other federal user agencies (the Federal Government) and Strafford County, New Hampshire (the Local Government) for the detention of persons charged with or convicted of violations of federal law or held as material witnesses (federal prisoners) at the Strafford County Jail (the facility).

The Local Government agrees to accept and provide for the secure custody, care and safekeeping of federal prisoners in accordance with state and local laws, standards, policies, procedures, or court orders applicable to the operations of the facility. The USMS considers all federal prisoners medium/maximum security-type prisoners that are housed within the confines of the facility, at a level appropriate for prisoners considered a risk of flight, a danger to the community, or wanted by other jurisdictions.

ARTICLE II - ASSIGNMENT AND CONTRACTING OF CATEGORICAL PROJECT-SUPPORTED EFFORT

1. Neither this agreement nor any interest therein may be assigned or transferred to any other party without prior written approval by the USMS.

2. None of the principal activities of the project-supported effort shall be contracted out to another organization without prior approval by the USMS. Where the intention to award contracts is made known at the time of application, the approval may be considered granted if these activities are funded as proposed.

3. All contracts or assignments must be formalized in a written contract or other written agreement between the parties involved.

4. The contract or agreement must, at a minimum, state the activities to be performed, the time schedule, the project policies, and the flow-through requirements that are applicable to the contractor or other recipient, other policies and procedures to be followed, the dollar limitation of the agreement, and the cost principles to be used in determining allowable costs. The contract or other written agreement must not affect the recipient's overall responsibility for the duration of the project and accountability to the government.

U.S. Department of Justice
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 3 of 11 |
|---|---|---|

ARTICLE III - MEDICAL SERVICES

1. The Local Government agrees to provide federal prisoners with the same level of medical care and services provided to local prisoners, including the transportation and security for prisoners requiring removal from the facility for emergency medical services. All costs associated with hospital or health care services provided outside the facility will be paid directly by the Federal Government. In the event the Local Government has a contract with a medical facility/physician or receives discounted rates, the federal prisoners shall be charged the same rate as local prisoners.

2. The Local Government agrees to notify the United States Marshal (USM) as soon as possible of all emergency medical cases requiring removal of a prisoner from the facility and to obtain prior authorization for removal for all other medical services required.

3. When a federal prisoner is being transferred via the USMS airlift, he/she will be provided with three (3) to seven (7) days of prescription medication which will be dispensed from the detention facility. When possible, generic medications should be prescribed.

4. Medical records must travel with the federal prisoner. If the records are maintained at a medical contractor's facility, it is the detention facility's responsibility to obtain them before a federal prisoner is moved.

5. Federal prisoners will not be charged and are not required to pay their own medical expenses. These expenses will be paid by the Federal Government.

6. The Local Government agrees to notify the USM as soon as possible when a federal prisoner is involved in an escape, attempted escape, or conspiracy to escape from the facility.

ARTICLE IV - RECEIVING AND DISCHARGE

1. The Local Government agrees to accept as federal prisoners those persons committed by federal law enforcement officers for violations of federal laws only upon presentation by the officer of proper law enforcement credentials.

2. The Local Government agrees to release federal prisoners only to law enforcement officers of agencies initially committing the prisoner (i.e., DEA, INS, etc.) or to a Deputy USM. Those prisoners who are remanded to custody by a USM may only be released to a USM or an agent specified by the USM of the Judicial District.

U.S. Department of Justice
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 4 of 11 |
|---|---|---|

3. The Federal Government agrees to maintain federal prisoner population levels at or below the level established by the facility administrator.

4. Federal prisoners may not be released from the facility or placed in the custody of state or local officials for any reason except for medical emergency situations. Federal prisoners sought for a state or local court proceeding must be acquired through a Writ of Habeas Corpus or the Interstate Agreement of Detainers and then only with the concurrence of the District USM.

ARTICLE V - PERIOD OF PERFORMANCE

This agreement shall be in effect indefinitely until terminated in writing by either party. Should conditions of an unusual nature occur making it impractical or undesirable to continue to house prisoners, the Local Government may suspend or restrict the use of the facility by giving written notice to the USM. Such notice will be provided thirty (30) days in advance of the effective date of formal termination and at least two (2) weeks in advance of a suspension or restriction of use unless an emergency situation requires the immediate relocation of prisoners.

ARTICLE VI - PER DIEM RATE AND ECONOMIC PRICE ADJUSTMENT

1. Per diem rates shall be established on the basis of actual and allowable costs associated with the operation of the facility during a recent annual accounting period.

2. The Federal Government shall reimburse the Local Government at the per diem rate identified on page one (1) of this agreement. The rate may be renegotiated not more than once per year, after the agreement has been in effect for twelve (12) months.

3. The rate covers one (1) person per "prisoner day". The Federal Government may not be billed for two (2) days when a prisoner is admitted one evening and removed the following morning. The Local Government may bill for the day of arrival, but not for the day of departure.

4. When a rate increase is desired, the Local Government shall submit a written request to the USM at least sixty (60) days prior to the desired effective date of the rate adjustment. All such requests must contain a completed Cost Sheet for Detention Services (USM-243) which can be obtained from the USM. The Local Government agrees to provide additional cost information to support the requested rate increase and to permit an audit of accounting records upon request of the USMS.

U.S. Department of Justice
United States Marshals Service

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 5 of 11 |
|---|---|---|

5. Criteria used to evaluate the increase or decrease in the per diem rate shall be those specified in the Office of Management and Budget (OMB) Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments.

6. The effective date of the rate modification will be negotiated and specified on the IGA Modification form approved and signed by a USMS Contract Specialist. The effective date will be established on the first day of the month for accounting purposes. Payments at the modified rate will be paid upon the return of the signed modification by the authorized Local Government official to the USM.

ARTICLE VII - BILLING AND FINANCIAL PROVISIONS

1. The Local Government shall prepare and submit original and separate invoices each month to the federal agencies listed below for certification and payment.

U. S. MARSHALS SERVICE
DISTRICT OF NEW HAMPSHIRE
409 FEDERAL BUILDING
55 PLEASANT STREET
CONCORD, NH 03301-3941
(603) 225-1632

U.S. MARSHALS SERVICE
DISTRICT OF MASSACHUSETTS
1516 U.S. COURTHOUSE
CONGRESS & WATER STREETS
BOSTON, MA 02109
(617) 223-9721

IMMIGRATION AND NATURALIZATION SERVICE
EASTERN REGIONAL OFFICE
REGIONAL COMMISSIONER
70 KIMBALL AVENUE
S. BURLINGTON, VT 05403-6813
(802) 951-6428

FEDERAL BUREAU OF PRISONS
COMMUNITY CORRECTIONS OFFICE
JFK FEDERAL BUILDING, SUITE 2200
BOSTON, MA 02203
(617) 565-4293

2. To constitute a proper monthly invoice, the name and address of the facility, the name of each federal prisoner, their specific dates of confinement, the total days to be reimbursed, the appropriate per diem rate as approved in the IGA, and the total amount billed (total days multiplied by the rate per day) shall be listed. The name, title, complete address, and phone number of the local official responsible for invoice preparation should also be listed on the invoice.

3. The Prompt Payment Act, Public Law 97-177 (96 stat. 85, 31 USC 1801), is applicable to payments under this agreement and requires the payment to the Local Government of interest on overdue payments. Determinations of interest due will be made in accordance with the provisions of the Prompt Payment Act and the Office of Management and Budget Circular A-125.

U.S. Department of Justice
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 6 of 11 |
|---|---|---|

4. Payment under this agreement will be due on the thirtieth (30th) calendar day after receipt of a proper invoice, in the office designated to receive the invoice. If the due date falls on a nonworking day (e.g., Saturday, federal holiday), then the due date will be the next working day. The date of the check issued in payment shall be considered to be the date payment is made.

NOTE: RATES NOT SPECIFIED IN THE AGREEMENT WILL NOT BE AUTHORIZED FOR PAYMENT.

ARTICLE VIII - SUPERVISION AND MONITORING RESPONSIBILITY

All recipients receiving direct awards from the USMS are responsible for the management and fiscal control of all funds. Responsibilities include the accounting of receipts and expenditures, cash management, the maintaining of adequate financial records, and the refunding of expenditures disallowed by audits.

ARTICLE IX - ACCOUNTING SYSTEMS AND FINANCIAL RECORDS

1. The recipient shall be required to establish and maintain accounting systems and financial records that accurately account for the funds awarded. These records shall include both federal funds and all matching funds of state, local, and private organizations. State and local recipients shall expend and account for funds in accordance with state laws and procedures for expending and accounting for its own funds, as well as meet the financial management standards in 28 Code of Federal Regulations (CFR), Part 66, and current revisions of OMB Circular A-87.

2. Recipients are responsible for complying with OMB Circular A-87 and 28 CFR, Part 66, and the allowability of the costs covered therein (submission of Form USM-243). To avoid possible subsequent disallowance or dispute based on unreasonableness or unallowability under the specific cost principles, recipients must obtain prior approval on the treatment of special or unusual costs.

3. Changes in IGA facilities: The USMS shall be notified by the recipient of any significant change in the facility, including significant variations in inmate populations, which causes a significant change in the level of services under this IGA. The notification shall be supported with sufficient cost data to permit the USMS to equitably adjust the per diem rates included in the IGA. Depending on the size of the facility for purposes of assessing changes in the population, a 10% increase or decrease in the prison population shall be a "significant increase or decrease" for purposes of this subsection.

**U.S. Department of Justice**
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 7 of 11 |
|---|---|---|

ARTICLE X - MAINTENANCE AND RETENTION OF RECORDS AND ACCESS TO RECORDS

1. In accordance with 28 CFR, Part 66, all financial records, supporting documents, statistical records, and other records pertinent to contracts or sub-awards awarded under this IGA shall be retained by each organization participating in the program for at least three (3) years for purposes of federal examination and audit.

2. The 3-year retention period set forth in paragraph one (1) above, begins at the end of the first year of completion of service under the IGA. If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the 3-year period, the records must be retained until completion of the action and resolution of all issues which arise from it or until the end of the regular 3-year period, whichever is later.

3. Access to Records: The USMS and the Comptroller General of the United States, or any of their authorized representatives, shall have the right of access to any pertinent books, documents, papers, or other records of recipients or its sub-recipients/contractors, which are pertinent to the award, in order to make audits, examinations, excerpts, and transcripts. The rights of access must not be limited to the required retention period, but shall last as long as the records are retained.

4. Delinquent Debt Collection: The USMS will hold recipient accountable for any overpayment, audit disallowance, or any breach of this agreement that results in a debt owed to the Federal Government. The USMS may apply interest, penalties, and administrative costs to a delinquent debt owed by a debtor pursuant to the Federal Claims Collection Standards.

ARTICLE XI - GOVERNMENT FURNISHED PROPERTY

1. It is the intention of the USMS to furnish excess federal property to local governments for the specific purpose of improving jail conditions and services. Accountable excess property, such as furniture and equipment, remains titled to the USMS and shall be returned to the custody of the USMS upon termination of the agreement.

2. The Local Government agrees to inventory, maintain, repair, assume liability for, and manage all federally provided accountable property as well as controlled excess property. Such property cannot be removed from the jail without the prior written approval of USMS Headquarters. The loss or destruction of any such excess property shall be immediately reported to the USM and USMS Headquarters. Accountable and controlled excess property includes any property with a unit acquisition value of $1,000 or

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 8 of 11 |
|---|---|---|

more, all furniture, as well as equipment used for security and control, communication, photography, food service, medical care, inmate recreation, etc.

3. The suspension of use or restriction of bedspace made available to the USMS are agreed to be grounds for the recall and return of any or all government furnished property.

4. The dollar value of property provided each year will not exceed the annual dollar payment made by the USMS for prisoner support unless a specific exemption is granted by the Chief, Prisoner Services Division, USMS Headquarters.

5. It is understood and agreed that the Local Government shall fully defend, indemnify, and hold harmless the United States of America, its officers, employees, agents, and servants, individually and officially, for any and all liability caused by any act of any member of the Local Government or anyone else arising out of the use, operation, or handling of any property (to include any vehicle, equipment, and supplies) furnished to the Local Government in which legal ownership is retained by the United States of America, and to pay all claims, damages, judgments, legal costs, adjuster fees, and attorney fees related thereto. The Local Government will be solely responsible for all maintenance, storage, and other expenses related to the care and responsibility for all property furnished to the Local Government.

ARTICLE XII - MODIFICATIONS/DISPUTES

1. Either party may initiate a request for modification to this agreement in writing. All modifications negotiated will be written and approved by a USMS Contracting Officer and submitted to the Local Government on form USM 241a for approval.

2. Disputes, questions, or concerns pertaining to this agreement will be resolved between the USM and the appropriate Local Government official. Space guarantee questions along with any other unresolved issues are to be directed to the Chief, Prisoner Services Division.

ARTICLE XIII - INSPECTION

The Local Government agrees to allow periodic inspections of the facility by USMS Inspectors. Findings of the inspection will be shared with the facility administrator in order to promote improvements to facility operations, conditions of confinement, and levels of services. The mandatory minimum conditions of confinement which are to be met during the entire period of the IGA agreement are:

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 9 of 11 |
|---|---|---|

1. Adequate, trained jail staff will be provided 24 hours a day to supervise prisoners. Prisoners will be counted at least once on every shift, but at least twice in every 24-hour period. One of the counts must be visual to validate prisoner occupancy.

2. Jail staffing will provide full coverage of all security posts and full surveillance of inmates.

3. Jail will provide for three meals per day for prisoners. The meals must meet the nationally recommended dietary allowances published by the National Academy of Sciences.

4. Jail will provide 24-hour emergency medical care for prisoners.

5. Jail will maintain an automatic smoke and fire detection and alarm system, and maintain written policies and procedures regarding fire and other safety emergency standards.

6. Jail will maintain a water supply and waste disposal program that is certified to be in compliance with applicable laws and regulations.

ARTICLE XIV - CONFLICT OF INTEREST

Personnel and other officials connected with the agreement shall adhere to the requirements given below:

1. Advice. No official or employee of the recipient, a sub-recipient, or a contractor shall participate personally through decisions, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise in any proceeding, application, request for a ruling or other determination, contract, grant, cooperative agreement, claim, controversy, or other particular matter in which Department of Justice funds are used, where to his/her knowledge, he/she or his/her immediate family, partners, organization other than a public agency in which he/she is serving as an officer, director, trustee, partner, or employee, or any person or organization with whom he/she is negotiating or has any arrangement concerning prospective employment, has a financial interest, or less than an arms-length transaction.

2. Appearance. In the use of Department of Justice project funds, officials or employees of the recipient, a sub-recipient or a contractor, shall avoid any action which might result in, or create the appearance of:

a. Using his or her official position for private gain;
b. Giving preferential treatment to any person;

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 10 of 11 |
|---|---|---|

c. Losing complete independence or impartiality;
d. Making an official decision outside official channels; or
e. Affecting adversely the confidence of the public in the integrity of the government or the program.

ARTICLE XV - GUARD/TRANSPORTATION SERVICES TO U.S. COURTHOUSE

1. The Local Government agrees upon request of the USM in whose custody a prisoner is held, to provide transportation and escort guard services for federal prisoners housed at their facility to and from the U.S. Courthouse. The Local Government agrees to the following:

a. Transportation and escort guard services will be performed by at least two (2) armed qualified officers employed by the Local Government under their policies, procedures, and practices, and will augment such practices as may be requested by the USM to enhance specific requirements for security, prisoner monitoring, and contraband control;

b. Upon arrival at the courthouse, transportation and escort guards will turn federal prisoners over to Deputy U.S. Marshals only upon presentation by the deputy of proper law enforcement credentials;

c. The Local Government will not transport federal prisoners to any U.S. Courthouse without a specific request from the USM who will provide the prisoner's name, the U.S. Courthouse, and the date prisoner is to be transported.

2. Each prisoner will be restrained in handcuffs, waist chains, and leg irons during transportation.

3. Such services will be performed by qualified law enforcement or correctional officer personnel employed by the Local Government under their policies, procedures, and practices. The Local Government agrees to augment such practices as may be requested by the USM to enhance specific requirements for security, prisoner monitoring, visitation, and contraband control.

4. The Local Government will continue to be liable for the actions of its employees while they are transporting federal prisoners on behalf of the USMS. Further, the Local Government will also continue to provide workers' compensation to its employees while they are providing this service. It is further agreed that the local jail employees will continue to act on behalf of the Local Government in providing transportation to federal prisoners on behalf of the USMS.

**U.S. Department of Justice**
*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 49-99-0104 | Page No. 11 of 11 |
|---|---|---|

5. Furthermore, the Local Government agrees to hold harmless and indemnify the USMS and its officials in their official and individual capacities from any liability, including third-party liability or workers' compensation, arising from the conduct of the local jail employees during the course of transporting federal prisoners on behalf of the USMS.

6. The Federal Government agrees to reimburse the Local Government at the rate specified on page one (1) of this agreement.