**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **Gordon C. Reid,** | : | |
| | : | |
| **Plaintiff** | : | **N.H. No. 1:06-cv-182** |
| | : | **R.I. Civil Misc. No. 06-44S** |
| **v.** | : | |
| | : | |
| **Warren Dowaliby,** | : | |
| **Superintendent, Strafford County** | : | |
| **Department of Corrections, et. al.,** | : | |
| | : | |
| **Defendants.** | : | **June 29, 2006** |

**RESPONSE TO COMPLAINT AND MOTION TO DISMISS ON BEHALF OF DEFENDANT WARREN F. DOWALIBY, SUPERINTENDENT, STRAFFROD COUNTY DEPARTMENT OF CORRECTIONS, ET. AL.**

Warren Dowaliby, Superintendent of the Strafford County House of Corrections, and Captain McPherson, Lieutenant Sullivan, Corporal McGowen, and Correctional Officer (C/O) Serne, of the Strafford County House of Corrections (hereinafter the County Defendants), by and through their undersigned counsel, respectfully submit their combined Response and Motion to Dismiss Plaintiff Gordon Reid's Complaint filed pursuant to 42 U.S.C § 1983. The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted; or in the alternative, summary judgment should be granted on behalf of the County Defendants pursuant to Fed. R. Civ. P. 56.

**FACTUAL BACKGROUND**

1. Mr. Reid is presently being held in pretrial detention at the Strafford County House of Corrections (SCHOC) in Dover, New Hampshire. Mr. Reid is a federal inmate, being held by the County Defendants pursuant to contract with the Federal

Marshall. Mr. Reid is awaiting trial in federal district court in Concord, on a charge of violating the Hobbs Act. His trial (a re-retrial after mistrial) is set to commence on July 18, 2006. Since he entered the SCHOC on June 22, 2005, Mr. Reid has been involved in numerous violent incidents with other inmates or correctional officers. *See*, Affidavit of Superintendent Warren Dowaliby, attached as Exhibit A, ¶ 2. These violent outbursts by Mr. Reid have required intermittent placement in maximum security. Id. Because of the repetition, and escalating violence of these incidents, Mr. Reid was reclassified in April of 2006 as a maximum security inmate. Id. Maximum security inmates do not have many of the privileges accorded inmates in the general population of the SCHOC; they are expected to earn these privileges by maintaining discipline-free conduct. Id. at ¶¶ 3-6.

2. However, the SCHOC has relaxed some of the restrictions normally placed on maximum security inmates in Mr. Reid's case in consideration of his *pro se* status in his upcoming criminal trial. In particular, the SCHOC has allowed Mr. Reid access to his legal documents and to a computer for legal research on an almost daily basis. According to the records kept by SCHOC personnel, despite brief interruptions due to disciplinary segregation, Mr. Reid has been allowed between 40 – 46 hours of legal research and writing time between March 30 and June 11, 2006. Id. at ¶ 7; see also Supplemental Dowaliby Affidavit, attached as Exhibit B, ¶ 2.[1]

---

[1] Since the preparation of the original Dowaliby Affidavit, the Superintendent reviewed the log kept to document Mr. Reid's access to the law library, and discovered an error in Exhibit A, ¶ 7. The log actually indicates somewhere between 40 -46 hours of access during the dates set forth above. Therefore, paragraph 7 of Superintendent Dowaliby's affidavit (Exhibit A), which gave the number of hours as 46 ½ , has been corrected by his supplemental affidavit, attached as Exhibit B (also attached to Exhibit B is the portion of the log that covers the dates in question). As can be seen from the log, most of Mr. Reid's research hours were between May 28 and June 11, as Mr. Reid was in disciplinary segregation for much of the time between March 29, 2006 and mid to late May, 2006. *See* Dowaliby affidavits, Exhibit A, ¶ 2; Exhibit B,.¶ 2.

3. On May 17, 2006, Mr. Reid filed this complaint, pursuant to 42 U.S.C. § 1983 against the Federal Marshall and the County Defendants alleging that confiscation and destruction of his legal materials and denial of access to legal research materials had violated his constitutional right of access to the courts; and that certain conditions of his confinement constituted a violation of the constitutional protection against cruel and unusual punishment. At the same time, Mr. Reid also filed a motion for a temporary restraining order (TRO) against the Defendants. On May 18, 2006, the judges of the District of New Hampshire recused themselves from hearing this case, and it was transferred to the District of Rhode Island. On June 2, 2006, the Honorable Magistrate Judge Lincoln D. Almond issued an Order directing the Marshall to serve all Defendants, and further directing all Defendants to answer the Motion for TRO no later than 7 days from receipt of service; and to file responsive pleadings to the Complaint no later than 20 days from receipt of service. The County Defendants were served with the Motion and Complaint on June 9, 2006. Due to miscommunication between the County Defendants and undersigned counsel regarding who would be representing them, the County Defendants did not file their answer to the TRO motion until June 23, 2006. That Answer was accompanied by the original affidavit from Superintendent Dowaliby (Exhibit A), which is also attached to this pleading.

## PLAINTIFF'S ALLEGATIONS

4. Mr. Reid's § 1983 Complaint alleges that his constitutional right of access to the courts has been violated by the Defendants in the following three ways: (1) by the alleged denial of the ability to make out-going or receive in-coming telephone calls; (2) by the alleged seizure and partial destruction of his legal materials; and (3) by the alleged

denial of access to legal research materials. His Complaint also alleges that his constitutional right to be protected from cruel and unusual punishment has been violated by various conditions of his confinement, including the following: (1) deprivation of sleep due to nighttime cleaning activities and/or lights; (2) use of an excessive amount of mace spray, and improper decontamination from same; (3) denial of due process with respect to disciplinary proceedings; and (4) deprivation of various privileges afforded to general population inmates due to his placement in maximum security.

## LEGAL STANDARD

5. A District Court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In its discretion, a Court ruling upon such a motion may consider materials outside the pleadings. Fed. R. Civ. P. 12(b). As set forth below, the allegations of the Plaintiff's Complaint are insufficient to state a claim upon which relief can be granted.

## DISCUSSION

6. Mr. Reid alleges that various conditions of his confinement in maximum security amount to cruel and unusual punishment, including (1) the inability to make out-going telephone calls;[2] (2) the inability to do paid work within the jail; (3) the inability to go to "outside" recreation;[3] (4) the denial of access to radio, television, and microwave ovens; and (5) the denial of access to the jail canteen. These allegations are insufficient to make out a claim cognizable under 42 U.S.C. § 1983. As set forth in the

---

[2] As discussed *infra*, maximum security inmates can receive in-coming legal calls.

[3] No SCHOC inmates have access to outside recreation. However, as set forth in the affidavit of Superintendent Dowaliby (Exhibit A, ¶ 4), general population inmates do have access to recreation areas within the facility.

Superintendent's affidavit, the restrictions imposed upon the freedom of inmates who have been classified as maximum security or placed in maximum for a finite period due to disciplinary problems are for the purpose of ensuring the safety of the facility. Exhibit A, ¶¶ 4-6. Maximum security inmates must earn the privileges afforded inmates in the general population by demonstrating that they can conform their conduct to jail rule and regulations. Id. This Mr. Reid has failed to do.

7. " '[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators . . .' 'Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " Collins v. Ward, 652 F.Supp. 500, 509 (S.D.N.Y. 1987) (*quoting* Rhodes v. Chapman, 452 U.S. 337, 349 n. 14 (1981), *and* Whitley v. Albers, 475 U.S. 312, 321-22 (1986)) (other citations and quotations omitted). The claims Mr. Reid makes in his Complaint as to the conditions of his confinement in maximum security "are essentially a catalog of complaints concerning the day-to-day operation of the [jail] and do not state violations of a constitutional magnitude." Holloway v. Dobbs, 715 F.2d 390, 392 (8th Cir. 1983).

8. Mr. Reid also makes two more specific allegations of cruel and unusual punishment, the use of an excessive amount of mace and/or the failure to properly decontaminate him after its use; and the deprivation of sleep caused by nighttime cleaning and/or lights left on 24 hours per day. With respect to the latter claim, as set forth in the affidavit of Superintendent Dowaliby, the floor cleaning machines must be used at night, but are only used twice per month at most. Exhibit A, ¶ 12. The 24 hour

lights are for security reasons, but are low wattage; in addition, inmates are provided with sleep masks upon request. Id. Thus, this complaint also fails to rise to the level of an unconstitutional condition of confinement.

9. With respect to the incident where Correctional Officers had to use mace on Mr. Reid in order to break up a physical confrontation he was involved in with another inmate, there is no basis for Mr. Reid's assertion that an excessive amount of mace was used. Nor does the use of mace under the circumstances constitute cruel and unusual punishment. *See* Disciplinary Report dated December 26, 2005, attached as Exhibit C. Additionally, as set forth in the supplemental affidavit of Superintendent Dowaliby (Exhibit A, ¶ 10; Exhibit B, ¶ 3), the fact that a warm, rather than cold shower was used to decontaminate Mr. Reid was inadvertent and unintentional. "[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . Thus, the infliction of pain in the course of a prison security measure, . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Collins v. Ward, 652 F.Supp. at 507 (internal quotations and citations omitted).

10. As further established by the supplemental Dowaliby affidavit, Mr. Reid was treated by SCHOC medical personnel right after the incident, and there is no record of him making any further complaint about lingering effects of the mace until May of 2006. Exhibit B, ¶ 3. When he made this complaint, in May, he was sent to an eye doctor outside the facility, who prescribed some ointment. The SCHOC has no record of any complaint of burning of his genitals, or of impairment to his eyesight. Id.

"[I]nadequate medical care does not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rises to the level of 'deliberate indifference to serious medical needs.' " Holloway v. Dobbs, 715 F.2d at 393 (*quoting* Estelle v. Gamble, 429 U.S. 97, 104-106 (1976). Clearly, Mr. Reid cannot demonstrate that the SCHOC displayed "deliberate indifference" to his medical needs. Thus, the incident involving the use/decontamination from mace spray does not rise to cruel and unusual punishment.

11. Mr. Reid's remaining claim is that he is being denied his constitutional right of access to the courts by being deprived of his legal materials and of the means to conduct legal research. Most of these claims have been responded to in the County Defendants' Response to the Motion for TRO, and by the original Dowaliby affidavit (Exhibit A). As asserted in that Response, Mr. Reid's claim of denial of access to the courts is belied by his ability to prepare and file the lengthy pleadings in this Court. His claim is further belied by the fact that this is not the first time he has litigated this issue. In April of 2006, Mr. Reid filed a Motion for Transcripts and a Motion for Access to the Court in the Federal District Court in New Hampshire. *See* Exhibit D, attached hereto. In response to these pleadings, the Court (DiClerico, J.) ordered an official from the SCHOC to appear in Court to answer Mr. Reid's claims. Id. Captain McPherson and Lt. Cullen attended this hearing in Concord on May 16, 2006. As set forth in Captain McPherson's affidavit (Exhibit E, attached hereto), Mr. Reid was given another copy of his transcripts in court that day. In addition, Mr. Reid was advised by the judge that if he conformed his conduct to the rules and regulations of the SCHOC, he would be able to get more access to his legal materials. In addition, Judge DiClerico noted that, as Mr.

Reid's upcoming trial is a retrial after mistrial, the time required for preparation should be less than might otherwise be required. Id. With respect to Mr. Reid's remaining claim, that he has been denied in-coming legal calls, this was addressed by the original Dowaliby affidavit (Exhibit A, ¶ 5), which explained that there is a telephone in the maximum security unit for the receipt of in-coming legal calls. Maximum security inmates are taken out of their cells to receive such calls. As further set forth in the supplemental Dowaliby affidavit (Exhibit B, ¶ 4), the only interruption of Mr. Reid's ability to receive in-coming legal calls was due to the temporary malfunction of the telephone in the maximum security area, which was addressed once brought to the attention of the administration.

12. "[T]o state a claim for interference with the right of access to the courts, an inmate must establish that inadequate facilities or interfering regulations have actually frustrated or impeded a nonfrivolous (1) criminal trial or appeal, (2) habeas proceeding, or (3) section 1983 case challenging the conditions of his confinement." Ornelas v. Giurbino, 358 F.Supp. 2d 955, 972 (S.D. Cal. 2005) (*citing* Lewis v. Casey, 518 U.S. 343 (1996)). This standard requires the inmate to demonstrate that an "actual injury" has occurred. Lewis, 518 U.S. at 353. Given the fact that Mr. Reid has undeniably had access to the courts, both this Court and the District Court for New Hampshire; and given the fact that he has been allowed between 40 46 hours of legal research time (Exhibit B, ¶ 2, and attached log) between March 30 and June 11 of 2006 he cannot sustain a claim of unconstitutional denial of access to the courts.

**CONCLUSION**

For the foregoing reasons, the County Defendants respectfully request that the Court dismiss the Plaintiff's Complaint.

Respectfully submitted,

Warren Dowaliby, Superintendent,
Strafford County House of Corrections,

By his attorney,

Janice K. Rundles
Strafford County Attorney
PO Box 799, 259 County Farm Road
Dover, NH 03821
(603) 749-2808
(603) 743-4997 (facsimile)

**Certificate of Service**

This is to certify that the foregoing Response and Motion to Dismiss Complaint was sent via first class mail to Gordon Reid, pro se, and by overnight mail to the District court for the District of Rhode Island, on this 28th day of June, 2006.

Janice K. Rundles