# AFFIDAVIT OF SUPERINTENDENT WARREN DOWALIBY, STRAFFORD COUNTY HOUSE OF CORRECTIONS

**NOW COMES Warren F. Dowaliby, Superintendent of the Strafford County House of Corrections, and here by states, under oath, the following:**

**1. I have been the Superintendent of the Strafford County House of Corrections (SCHOC) since October 1st of 2003. I was first employed by the SCHOC as a Correctional Officer on May 20, 1983. I was promoted to Sergeant on December 15, 1985. On September 15, 1991, I was appointed head of security at the SCHOC. On September 22, 1993, I was promoted to Lieutenant. On September 1, 1998, I was promoted to Captain, and on May 15, 2003, I was appointed Acting Superintendent.**

**2. Inmate Gordon Reid is a federal pretrial detainee, who entered our facility on June 22, 2005. He was initially housed in general population, until August 31, 2005, when he was placed in maximum due to an incident where he assaulted a Correctional Officer by throwing a chair at him. Inmate Reid remained in maximum until September 20, 2005, when he again was placed in general population. On November 18, 2005, he was again moved to maximum security, based upon an incident where he argued with a Correctional Officer. At his disciplinary board hearing on December 5, 2006, that charge was found not proved, and Reid was placed back in general population. On December 26, 2005, inmate Reid was involved in a physical altercation with another inmate, in which Reid refused to let go of the other inmate and had to be pepper sprayed by a Correctional Officer. Following this incident, Reid was again moved to maximum security. On January 18, 2006, he was placed back in general population. On March 29, 2006, Reid was involved in a physical fight with another inmate, and was again placed in maximum security. On April 14, 2006, Reid was placed back in general population; however, on April 15, 2006, Reid was involved in an incident where he stabbed another inmate in the head with a spork (a hard plastic combination spoon and fork). Thus, on April 15, 2006, Reid was again placed in maximum security. Due to his cumulative disciplinary record, inmate Reid was re-classified in April of 2006 as a maximum security inmate, and remains in that classification today.**

**3. There are only three classifications of inmates at the SCHOC – minimum, medium, and maximum. Inmates classified as minimum and medium are considered general population. Any inmate who is placed in disciplinary segregation (as inmate Reid was on the dates set forth above), is placed in the maximum housing unit. Such inmates are held under the same conditions as other inmates placed in maximum by classifications.**

**4. Inmates in maximum are allowed one hour out of their cell per day. This hour can be spent in the all purpose room in the maximum unit, or showering. Inmates who are in maximum are not taken out of the unit to indoor recreation areas, as are inmates who are in general population. There are no outside recreation areas for any inmates at the SCHOC.**

PENGAD 800-631-6989 EXHIBIT A

5. Inmates in maximum are not allowed to make outgoing telephone calls. However, there is a telephone in the maximum housing unit which is equipped to receive incoming legal calls. Inmates in maximum can therefore receive incoming calls from their attorneys, and are taken out of their cell to receive the call.

6. Inmates in maximum also do not have other privileges that are available to inmates in the general population, such as access to television and radio; access to canteen; ability to make outgoing telephone calls; access to educational programming; ability to eat meals in a common area; and access to legal research and documents. The philosophy of the SCHOC is that inmates placed in maximum must earn such privileges back by displaying proper behavior.

7. Despite the restrictions that apply generally to maximum security inmates, inmate Reid has been given some additional privileges, due to the fact that he is representing himself in his pending case in federal court. Inmate Reid has been allowed access to legal research via computer that is brought in to a separate room in the maximum security unit. Inmate Reid has also been allowed to have all of his legal documents with him during the times he is allowed out of his cell for purposes of legal research and writing. Under my direction, SCHOC Educational Director Jake Collins has kept a record of the times and dates when inmate Reid was allowed out of his cell to do legal research and preparation. This record reflects some brief interruptions in inmate Reid's access to legal materials due to his disciplinary problems. However, the log reflects that from March 30, 2006 to June 11, 2006, inmate Reid had access to his legal materials and to legal research via computer for a total of 46 ½ hours (the actual total is somewhat higher than this, due to the fact that on one day, only the fact that inmate Reid was doing legal research was recorded but the log fails to record how long he did so).

8. When an inmate is involved in an incident of physical violence or that implicates facility security in some other way, the inmate is removed to maximum security immediately, pending a disciplinary proceeding. The inmate is given a written synopsis of the incident that gave rise to the disciplinary action, including the disciplinary rules he/she is alleged to have violated. This written synopsis is provided in advance of the disciplinary hearing, along with a notice of when the hearing is to be held. In all cases where inmate Reid was assigned to maximum security as a disciplinary measure, he was given the notice set forth above. In at least one case, inmate Reid refused to attend the disciplinary hearing.

9. The policies of the SCHOC state that, when it is necessary to pepper spray an inmate, the inmate is to be decontaminated first with a bio-shield spray, and then with a cold shower. However, there is only one cold shower in the facility. Thus, if that shower is not available, another shower may have to be used for decontamination. Every effort is made to insure that the water being used for this purpose is cool rather than warm.

10. The SCHOC reviews all inmate mail for contraband or dangerous items, but does not read legal mail. Transcripts received at the SCHOC for inmate Reid were delivered to him after the metal clasps holding the volumes together were removed. No other part of the package was removed or destroyed; however, inmate Reid refused to

**accept the transcripts. The federal district court in Concord later provided inmate Reid with the transcripts in another form.**

**11. All inmates at the SCHOC are required to clean their own cell and unit areas. This is the only work inmates are required to perform without pay. Some pretrial detainees are able to do work for compensation. However, under guidelines set by the federal Marshall, federal pretrial detainees are not allowed to work outside of their housing unit without constant supervision. There are therefore only a few jobs with compensation that are available for federal pretrial detainees. These jobs are awarded without reference to the race of inmate. There are currently two African-American federal pretrial detainees who are doing compensated work at the SCHOC, on in the laundry area, and one on the floor cleaning crew.**

**12. In the maximum security unit, some lights are kept on 24 hours per day for security reasons. These lights are low wattage lights, and should not interfere with sleep. Sleep masks are issued to those inmates who request them. The only heavy machinery operated after lights out is the floor buffing and cleaning machines. It is necessary to do the floor buffing and cleaning after lights out due to interference from daytime activities, and for security reasons. This floor cleaning is only conducted one or two nights per month at the most.**

**I hereby declare, under oath, that the foregoing is accurate and true to the best of my knowledge and belief.**

Warren F. Dowaliby

**Warren F. Dowaliby, Superintendent**
**Strafford County House of Corrections**

**On this** 13th **day of** June **, 2006, before me appeared the above referenced affiant, Warren F. Dowaliby, and made oath that the foregoing statement is true and accurate.**

Jeanne P McKenzie

**Notary Public/Justice of the Peace** exp 4/7/09